No. 31.—WILLIAM BAILEY, plaintiff in error, *vs.* WILLIAM BROCKETT, defendant.

[1.] Whoever has the legal title to property, is entitled to claim it wherever the equitable interest may be.

[2.] Property belonging to wife and children, should not be subjected to the payment of the debts of the husband and father, because the proper party has not claimed.

Motion for new trial, in Baker.    Decided by Judge ALLEN, May Term, 1856.

In the year 1845, at the June Term of Baker Superior Court, William Bailey obtained a judgment against William Brockett.    On the 19th day of September, in the year 1845, a *fi. fa.* founded on said judgment was levied on "two negro children—a boy by the name of Reddick, about six years old, and a girl by the name of Margaret, about four years old," as the property of the defendant.    William Brockett, the defendant in *fi. fa.* then interposed a claim to said slaves, as the natural guardian of Bennett S. Brockett, his son, a minor child.

At the November Term, 1855, the claim issue came up on the appeal for trial, his Honor, Judge PERKINS, presiding.

Plaintiff in *fi. fa.* proved the identity of the negroes levied on; that they were in possession of defendant in 1845, and in the fall of that year.    The *fi. fa.* and levy were then put in evidence, the *fi. fa.* bearing date the 10th June, 1845, and issuing from a judgment obtained the 3d day of June, 1845, and the levy on the 19th of September, 1845.    The plaintiff then rested his case.

### EVIDENCE FOR CLAIMANT.

EDMUND D. HOUSE testified, that William Brockett got possession of the negroes from Aaron Dixon.    The names of

the negroes were Nancy, and two children, Armstead and Tom. William Brockett, the defendant, held the negroes by deed of gift from Aaron Dixon to Brockett's wife and children. Nancy was a negro woman about thirty years old at the time the deed was executed—black complexion, stout, and limped a little in walking; Armsted was seven or eight years of age; Tom about five years of age—both stout built and quite dark. Aaron purchased the negroes from witness and paid him for them, and witness gave him possession of them. Dixon is grand-father to defendant's children. The purpose Dixon had in view, as he understood, at the time of giving William Brockett possession of the negroes, was for the benefit of defendant's wife and children. Defendant had no other negroes, to witness' knowledge. Witness says he has no interest in the case, and is not connected with or related to defendant; that Dixon purchased the negroes of witness, and was in possession of them prior to the making the deed of gift to defendant's wife and children.

Witness was present when the deed was executed, and knows the negroes were given to defendant's wife and children. Witness never resided in Georgia. Dixon owned other negroes than those in controversy, and had some four or five children besides Brockett's wife. Does not know whether he ever gave any of his other children slaves or not.

LARKIN C. MUSGROVE testified, that he was present when defendant swapped a negro boy named Tom, to a Mr. John Morrow. The swap took place in December, 1845. The defendant swapped Tom for two negroes, one named Reddick and the other Margaret. Tom was considered to be worth some three hundred and fifty or four hundred dollars. The said negroes, Reddick and Margaret, were children at the time of the trade or swap. Witness does not think there was much difference in the value between the two children and the boy Tom. Witness loaned the claimant's son $15, $20 or $25, to pay the difference; and defendant told witness that Tom was his son's property, and he traded him as such. No person was present but Morrow, Brockett, his son and

witness. Defendant said he was authorized by his father-in-law, who gave the negroes to Brockett, to swap for the benefit of Bennett; that he believes the negroes now levied on are the same that were swapped for Tom; that Bennett S. Brockett paid the money loaned to him by the witness; knows but one negro in the possession of defendant, by the name of Tom.

Witness proved the execution of a bill of sale for said two negroes, from Morrow to Bennett S. Brockett, dated April 5, 1845.

Witness farther says, that he believes the bill of sale was written by John Morrow at the time the trade took place. Bennett S. Brockett paid the four hundred dollars in the negro boy Tom and the money I loaned him. Witness thinks there were six children, brothers and sisters of Bennett S. Brockett, at the time the trade was made. Defendant did not say that Bennett claimed the boy for the purpose of keeping his, defendant's, creditors from taking him. The defendant, witness believes, controlled the boy Tom as the father of Bennett; knows nothing of any fraud in the matter, and does not know of any attempt to defraud the creditors of defendant; knows nothing of the number of Dixon's children, or how much he was worth. Witness has heard Brockett say that Dixon gave Bennett the negroes because Bennett was his first grand-son.

PETER J. STROZIER testified, that the original deed of gift from Aaron Dixon to the wife and children of defendant, the same as testified to by House, was attached to a set of interrogatories and answers of Quattlebum, the subscribing witness to it, and proving the execution of the deed of gift, and that the deed of gift, with the proof of its execution, was destroyed by fire in the burning of his office in 1848; that the deed was to the wife and children of the defendant, authorizing the defendant to exchange the negro woman Nancy, Armstead and Tom, for other property, for the use and benefit of the wife and children to whom they were given; that said deed of gift bore date before the 1st of June, 1845, and be-

fore the rendition of the judgment—precise date cannot be remembered—and had for its consideration, as expressed, love and affection.

Claimant then introduced the bill of sale of E. D. House, made in Gadsden County, Florida, January 23d, 1841, to Aaron Dixon, for the slaves, Nancy and three children, Armstead, Tom and Sam.   Claimant here rested.

## IN REBUTTAL.

John J. Collins being introduced, testified, that Aaron Dixon had ten children; and at the time of the deed of gift to the children of defendant, he had but two other negroes. William Brockett came to Georgia, from Florida, in 1841, and brought Armstead and Tom with him.   Aaron Dixon was amply able to buy and pay for the three negroes of House, and that defendant, Brockett, was worth little or nothing, and had no means to pay for the negroes.

It was then made apparent to the Court, from the records, that in the same case, in the same Court, previously, a Special Jury had rendered a similar verdict, finding said property subject to said *fi. fa.* upon which a new trial had been ordered.

The Jury found the property subject.

Thereupon, Counsel for claimant moved a rule for a new trial, upon the grounds—

1st.  That the Jury found contrary to evidence.

2d.  That the Jury found contrary to law.

3d.  That the Jury found contrary to law and evidence.

4th.  For that the charge of the Court was erroneous in this: that the Court charged the Jury that if they believed, from the evidence, that defendant in execution was in the possession of the negroes levied on at any time subsequent to the rendition of the judgment, then and in that event it would be their duty to find them subject, unless they were

satisfied that the title was in the claimant.   If they were sat-- isfied such was the fact, and that it was a *bona fide* title, not having been made fraudulently and for the purpose of de- frauding the creditors of defendant, then and in that event they should find for the claimant.   But if they should be- lieve from the evidence, that the title to the negroes in ques- tion was in the wife and children of defendant, and not in Bennett S. Brockett, the claimant, they must find for the plaintiff, for the reason that it is not competent for a claim- ant to defend his claim by showing title in third persons, but. must show title in the claimant.

The motion for a new trial came on to be heard at said May Term, 1856, when the Court, after argument, made the- rule absolute and ordered a new trial in behalf of claimant,. upon the grounds stated.   Counsel for plaintiff in *fi. fa.* ex- cepted and assigns the same as error.

Lyon & Clark, for plaintiff in error.

Slaughter & Slaughter, for defendant.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] We think the Court manifestly right in granting a new trial in this case.

Admitting Tom, the boy swapped by Bennett S. Brockett for the two negroes levied on, to have been trust property, and that the trustee, or the *co-cestui que trusts,* might either follow Tom in the hands of Morrow, or else ratify the ex- change, and consider Reddick and Margaret as the proceeds of Tom substituted in his place; still, the *legal title* was in Bennett S. Brockett; and consequently, he was entitled to interpose the claim.

[2.] We are inclined to think, that under the proof as to the right to the possession of the property in the *cestui que trust,* he, as joint tenant, seized *per me et per tout,* of the whole property, might have claimed.

But concede that William Brockett, the defendant in execution, has no title, and the proof shows it incontestably, surely this property, belonging to the wife and children, is not to be subjected to the payment of the husband's debts, upon a technicality!